We'll hear argument first this morning, Case 14-6166, Taylor v. United States. Mr. Jones. Mr. Chief Justice, and may it please the Court, the Hobbs Act has two elements. The first requires that the accused obtain property from another by either extortion or robbery. The second is a jurisdictional element, and that the consequence of either the extortion or the robbery creates an interference with commerce. The effect on commerce is a jurisdictional element of the crime, and like all elements, must be proven beyond a reasonable doubt. Through the introduction of particularized evidence necessary to establish this element. In the case of this case, the government was not required to prove the effect on commerce element, which ultimately resulted in the conviction of Mr. Taylor. One of the things you say in your brief is that you were not even given the opportunity to show that the victims dealt exclusively in homegrown marijuana. If you had that opportunity, how would you have shown that this, the marijuana in question, was grown in Virginia rather than some other place, some other State? Your Honor, in all likelihood, I would have either called as a witness a retired DEA agent or an ATF agent or a retired local police officer who had years of experience in that field, qualifying that person. Virginia is a State, like all the other States, that has the ability to grow marijuana in State. It's been going on for years and years and years. There's not necessarily, we cited in our brief, not only the DEA statistics for a time period that show not only the amount of marijuana that was subject to the eradication plan of DEA in Virginia, but also a couple of local news articles and events where in Botetourt County, I think the most current one was 2013, about the time we were before the Fourth Circuit. That could show that it could have been grown, but you could say that for every State in the Union. Ginsburg. But you made, you said you wanted to submit proof that the victims dealt exclusively in homegrown marijuana. And since every other State also has marijuana dealers, how could you show exclusively that this marijuana came exclusively? Well, for one thing, it could have cross-examined them on that point. But pursuant to the motion in Limonee, I think trial counsel at that point believed that he was precluded from even going into that area with the victims. Well, Mr. Jones, suppose you had been able to show this. Suppose you had been able to show that it was a dealer who dealt in intrastate marijuana exclusively. What difference would that have made under the terms of the Hobbs Act? Under the terms of the Hobbs Act, the government would have borne the proof of going forward and showing an effect on interstate commerce. But that's the thing. I mean, I don't think that the Hobbs Act requires the government to show an effect on interstate commerce. As you said in your opening statement, the Hobbs Act only requires an effect on commerce. And then commerce is defined. Commerce means all commerce over which the United States has jurisdiction. Now, for sure, the United States has jurisdiction over interstate commerce, but under Raich, it also has jurisdiction over intrastate drug trafficking. And so if you just sort of put the pieces of the statute together, it seems to make it completely irrelevant whether the drug trafficking was intrastate or interstate, because in either case, it was commerce over which the United States has jurisdiction. I think the difference between the Hobbs address, excuse me, Raich address, was of course the Controlled Substance Act. The Controlled Substance Act is a matter of regulation of interstate commerce and not so much did not address as a separate issue the effect on interstate commerce, on commerce. So what the Hobbs Act, in our view, addresses is the effect, not so much the regulation. A reading of the Raich case, the word of the Hobbs, doesn't Raich say that the government has jurisdiction, the United States has jurisdiction over intrastate drug trafficking? It does, Your Honor. So why isn't that enough? Because this statute, again, does not require that there be an effect on interstate commerce. It affects — it requires that there be an effect on commerce as defined in the statute. And as defined in the statute, all it says is that the commerce has to be one of the kind over which the United States has jurisdiction, and Raich says the United States has jurisdiction over even intrastate drug dealing. Raich does say that, but the plain language of the Hobbs Act, the essence of the crime itself is the effect, the word effect is used in the Hobbs Act. And even if you — by the regulation of commerce does not in and of itself have an effect on the commerce. Well, then you could make the same argument if it was conceded that these drugs were in interstate. You'd say, oh, well, you still have to show an effect. Is that what you're saying? Yes, sir. But based on your answer, Justice Kagan, it doesn't make any difference whether it's local or interstate. Well — There is still a failure of proof somehow. There is a failure of proof. That's very hard — that's very hard to comprehend. Your Honor, there was no proof here. The only proof that was admitted to record was through some police officers who were considered to be experts. There were some questions. I think the dialogue — Do you think robbery of an item in interstate commerce has an effect on that commerce? Do I think robbery of goods in interstate commerce have an effect on interstate commerce? Or does the government in every case have to show that there is an effect? I think if the goods are found — Yes, the government in every case in your submission has to show that if there's an effect on interstate commerce when there's been a robbery. That's your position. No, Your Honor, not to use that word. All right. But then how do you explain your answer that effect is the key word here? Well — You just concluded that it isn't. In the numerous cases that have been cited in our brief as well as the government's brief, you take, for example, the Tillard case that is out of the Fourth Circuit. That was a robbery of a dry cleaner in the Portsmouth, Virginia Beach area of Virginia. I think it was about $40 taken in that robbery, if I recall it correctly. The effect on the commerce was the ability of that business to purchase its coat hangers, for example. They came from China. They came from Mexico. There was also cleaning solvents that was purchased and used by that business that was manufactured and transported from Georgia to Virginia. The evidence in those cases show that whatever the subject of the commodity that was being sold or used by that particular enterprise had traveled in interstate commerce, and in some instances, the individual himself had traveled in interstate commerce. So you had evidence to that fact. Suppose — suppose the victims of this robbery, the drug dealers, suppose the police had a warrant to go into the house and they — if there is marijuana there and they take it, could the victims who were there, they were Worley or Lynch, could they be charged  Could they be prosecuted or could they not be prosecuted because the government was unable to show that the marijuana they possessed came from out of State? Could Worley or Lynch have been prosecuted as a drug dealer? Yes, Your Honor. I think they could have been. They could have been, even though — even though all of the marijuana came from Virginia. I think they could have been. Under the — under the Controlled Substance Act, under Title XXI, I'm not sure. Alito, when Congress enacted the Hobbs Act, did it intend to exercise the full measure of its authority under the Commerce Clause? History tells us that it did, I think, and this Court's precedence tells us that it did. All right. Could Congress enact a statute under — under Raich, based on the reasoning of Raich, prohibiting the theft of a controlled substance, just as it has put — enacted statutes prohibiting the growing of marijuana or the production of other controlled substances? Excuse me. Could it have — Could it enact a statute that makes it a crime to steal a controlled substance, exercising its Commerce Clause authority under the reasoning of Raich? It could have, but with — from our view, however, you would still have to show that effect, that impact, that influence on the marijuana or drug trafficking. On a case-by-case basis, then, why can it prohibit the growing of marijuana across the board, without proving anything about the particular marijuana in question? But according to you, it cannot prohibit the sale of — I'm sorry, the theft of marijuana. Well, I think our position is that it's the effect, and the effect can come about in many ways. It's been addressed. You can have a reduction on the movement of marijuana from one state into your other state because there's no need for it. But that would require evidence as to that effect or that interference or that even the influence on the commerce piece of it. Why is that needed? Why is that not needed in a situation in which the person is growing marijuana for personal use? From our view, the 21 U.S.C. 801 regulates all drugs. And there's a difference in regulating from our — in our view, there's a difference in that regulation component from what the effect on interstate commerce is itself. They're standalone elements from our view. And since it's a criminal element that must be proven beyond a reasonable doubt, if you stop just at the robbery and say that as a result of the subject of that robbery being a drug dealer in toto, without looking at the specific piece of what the drug dealer is doing business in and whether it's traveling interstate commerce or whether it's, for example, methamphetamine. When you manufacture methamphetamine, which is clearly controlled under the Controlled Substance Act, those ingredients — Coleman fuel, lye, phosphorus — they all travel in interstate commerce. And the fact that they have done that, been in that travel, in that commercial lane, triggers the Controlled Substance Act to prohibit. Mr. Jones, I guess I'm trying to figure out what we're disagreeing about. So let me give you a proposition, and you tell me whether you agree with it. The Hobbs Act prohibits robberies that affect marijuana trafficking. Whether the marijuana trafficking is interstate or intrastate. Do you agree with that? I disagree with that. Well, why is that? Because that's what I was saying at the beginning, that it seems clear to me that under the terms of the Hobbs Act, the Hobbs Act does prohibit robberies that affect commerce. Raich says commerce includes both interstate and intrastate marijuana trafficking, so the Hobbs Act prohibits robberies that affect marijuana trafficking generally, whether it's interstate or intrastate. What's there to disagree with in that? I agree from the standpoint that the Controlled Substance Act under Raich regulates. But beyond that point, what the Hobbs Act, if Congress had wanted to use the word regulate rather than affect, Congress could very easily have done that. Well, but I said, I used the word affects. I didn't use the word regulate. I said the Hobbs Act prohibits robberies that affect commerce. Commerce is either interstate marijuana trafficking or intrastate marijuana trafficking under the definition in this statute. So the government has to show that a robbery affected some kind of marijuana trafficking. It doesn't matter what kind. Wouldn't you agree with that? I mean, it just seems because the terms of the statute plus Raich. Right. It's the commodity that's the subject of the robbery that has to affect. And if Congress, if the Hobbs Act, in the plain language of it, and I think we're all familiar with the phrase, commerce that's regulated by Congress, in that situation, if the commodity itself is a standalone, if that's the interpretation of the statute, then commerce is affected by the taking of the commodity, subject just because it's regulated, nothing more. Well, I guess this goes back to Justice Kennedy's question. I mean, it seems to me pretty self-evident that a robbery of a business affects a business. Wouldn't you think that that's right? Yes. I mean, I don't think that the word affects is doing a whole lot of work here, because of course a robbery of a business affects a business, right? Yes, ma'am. Okay. So it's not really affects that's the problem here. The problem seems to be that you're resisting the notion that the business could be entirely intrastate. But what I'm suggesting is that the terms of the Hobbs Act itself, given Raich, make clear that the business can be intrastate, because the definition of commerce here doesn't say intrastate commerce. It says commerce over which the United States has jurisdiction. And because of Raich, we know that the United States has jurisdiction over even intrastate drug dealing. Yes, Your Honor. I agree with that. Roberts. What is the standard of proof that you hold Congress to when it exercises jurisdiction over intrastate businesses with an effect on interstate commerce or interstate commerce? Somebody challenges Congress's exercise of jurisdiction because it doesn't fit within the interstate commerce or effect on interstate commerce. And the statute's evaluated according to what standard? I'm not sure that I understand the question. Well, somebody says, you know, challenges, as we've had challenges in cases like Lopez and others, that Congress, you don't have authority to regulate this matter because it doesn't involve interstate commerce, doesn't have an effect on interstate commerce and so on. But how do we evaluate that? Does Congress have to prove beyond a reasonable doubt that there is an effect on interstate commerce? In a congressional hearing, the congressional hearings that we have and the conclusions that they come to after they go through that process and their satisfaction of that, they promulgate the law. But if they create, in the passage of that act, for example, here the Hobbs Act, it's what we're saying is the plain reading of it, is that if in their wisdom the element is to establish this element, then it becomes an element of the criminal offense. And it's not so much the element of the regulation, but it's the element of the criminal offense. And when you have the element of the criminal offense, then I fall back, or it's our view, that then the Fifth and Sixth Amendments of the Constitution give precedent. And if Congress has not provided for that element in there, then we believe that this Court is the place to have that addressed. I don't think there's any question that this is a jurisdictional element and the jurisdictional element has to be proven. That's not the issue. The issue is the meaning of the jurisdictional element. And if the jurisdictional element means, as interpreted in Reishen, it's a controversial area of constitutional law, but it's a precedent and you're not challenging it, so the jurisdictional element, as interpreted in that case, is anything that has an effect on anything, any purely, any local activity that is of a type which, if taken in the aggregate, would have a substantial effect on interstate commerce, that falls within the Commerce Clause. And if the jury is instructed in that way, and that's basically the way I think it was instructed here, all they have to find is that there was a theft of, there was a robbery of drugs and it had some effect on the supply of drugs. In this case, I think they were instructed that our view of that instruction was that it was a per se or strict liability instruction, that if, because in that instruction, it's my recollection that Judge Conrad said, I tell you that if this happened, this is satisfied. Alito, that's what Reishen, that's the interpretation of the Commerce Clause. Do you want the jury to decide what the Commerce Clause means? It would be an interesting end. There are those who think that juries, once upon a time, had the authority to decide legal issues. Do you want them to decide whether the majority or the dissent was correct in Gonzales? Kennedy, No, sir, I would not. What I would like to have had an opportunity in this case was to address what we typically see as facts that constitute whether you're a drug dealer or whether you're not. And in this case, there wasn't. If you take, if you look at the evidence that was produced, it's been embellished, but the plain reading of the testimony, for example, in the Lynch case, there was no showing that the, that they had actually been engaged in a drug dealing enterprise. It was rumored that a person had been robbed, not Mr. Lynch, but a person had been robbed at some point in time in the past, I think of 20 pounds of marijuana. In the Worley case, it was, it was just stated, you couldn't go anywhere, that Mr. Worley had acknowledged selling marijuana one time about 3 or 4 years prior to this instance. There was simply no showing in the evidence of this case that you even had a commercial enterprise going, being conducted at either one of these residences. It's, it, it was an inference upon an inference. Well, that seems to me a different kind of argument that you're making now. Now you're not saying that the question is whether the marijuana that was being dealt was intrastate or interstate. Now you're suggesting that what you really wanted to prove was that this person wasn't a dealer at all. Is that correct? That's, that's, that's where we got here on this case was, was the absence of particularized evidence as to what was, what was taking place here. And we weren't able to pursue it to the rulings. We simply were not able to address that. Wasn't there evidence that this gang, that they were in, in the business of trying to rob drug dealers because they thought they'd find either the drugs or the money? Mr. Fitzgerald, who, from the evidence of this case, I believe to be an organizer or certainly one of the leaders in this, in this group of individuals. Our client, Mr. Taylor, he, he was added, I believe the evidence shows, for, for these two events. And the evidence in that case, and Judge, even Judge Conrad, I, I sensed that he became a little frustrated and he tried to clear it up, because when you start reviewing the evidence concerning the Worley robbery, when you start considering the evidence concerning the Worley robbery, Mr. Fitzgerald's testimony is, I don't know what's there. I don't know what to expect. I don't, I don't understand where we're going here. It, it, it seemed to me a few minutes ago you said, oh, there's no evidence that he was a drug dealer. But that's not the question presented. Your question presented assumes that he's a drug dealer, so don't argue that. I'm, I was trying to. So we know that there's a drug dealer here. We take the case on that basis. Yes, sir. All right. So we're talking about the interstate and local. So it, it seems to me that you, you just have not raised the point that there was no evidence that he was a drug dealer. Well, what. It's not in your petition. Our, our, our point in our petition was, is, is that there was a failure to present particularized evidence of the impact or the effect on, on interstate commerce as a result of the activities of these people. And we were precluded from addressing that. The whole theory of the case in, in, when it was presented in the district court was, was twofold. Number one, that this interstate, that, that the interstate commerce element had, had not been met, and that there was no particularized evidence to show that this influence or this impact on commerce. May I reserve? Certainly, Mr. Jones. Mr. Yang. Mr. Chief Justice, and may it please the Court, three characteristics of Petitioner's robberies underscore that this case falls within Congress's Commerce and Laws power. Petitioner's robberies targeted, first, the inventory in a commodity. Two, that inventory belonged to a commercial participant. And third, it was a commercial participant in an established interstate market in marijuana that is a Federally controlled substance over which Congress has exercised jurisdiction. So if it weren't a commercial aspect, then you wouldn't, you wouldn't, you would have to demonstrate jurisdiction beyond a reasonable doubt? No, I think there's, what, when you get out of the commercial sphere, the courts of appeals have drawn a distinction between robberies of businesses that are engaged in commerce, as the victims were here, and true individuals who just get robbed. And I think the courts have fairly uniformly recognized that the, while the robbery of a business is kind of economic in nature and direct, more directly implicates Commerce Clause concerns, when there's a robbery of an individual, the links are much more attenuated and there's a longer chain of causation to get to commerce. And so in those contexts, even within the depletion of assets theory that my brother espouses before the Court, the courts have said, as a normal matter, robberies of individuals just don't fall within the Commerce Clause. But what we have here is the robbery of marijuana, which we know from Raich, Congress regulates the trade in marijuana. It's in the marijuana trade. It's difficult to, I think, come to any other conclusion that the robbery of such marijuana from marijuana dealers engaged in a trade over which Commerce has jurisdiction is not a robbery that affects commerce over which the United States has jurisdiction. Roberts, Congress doesn't have to prove beyond a reasonable doubt before exercising its jurisdiction that there's an effect on interstate commerce. But if you're prosecuting somebody, you do have to show beyond a reasonable doubt that the elements of the crime have been satisfied. Well, what you do need to show is that the robbery affected commerce over which the United States had jurisdiction. And we know that Congress has jurisdiction over the entire marijuana trade. Now, the reason Congress has jurisdiction, as Raich explained, was analyzed under the rational basis review that often occurs in this type of context. But the fact of the matter is, at the end of the day, there is no doubt, it is a certainty, that Congress has jurisdiction over the marijuana trade. And so when you rob them, I suppose it's maybe an academic question, but your conclusion that Congress has jurisdiction over the marijuana trade is based on a different standard of proof than the criminal one. So, yes, you can say, of course, Congress has jurisdiction here, but that has been established only under, I guess, a rational basis standard. But now you have to show Congress has jurisdiction pursuant to a much more daunting standard of proof. We're not shying away from the standard of proof, but as we explained, the question of whether a robbery affects interstate commerce has both legal elements as well as factual elements. The factual elements, as we explain in our brief in this case, involve did the robbery occur, were they robbing and targeting the marijuana of marijuana dealers. But the legal question, which judges every day instruct juries under what the law is, and Godin teaches us that juries must follow those instructions, the legal conclusion is that the United States has jurisdiction over the entire marijuana trade. Now, there would be strange anomalies if juries were allowed to relitigate race in every case. Is there an effect, you know, does Congress have jurisdiction over interstate commerce? Juries would be coming up with divergent results over the question whether Congress has jurisdiction over interstate marijuana trade contrary to Congress's own decision in the decision of this Court. That is a purely legal question. It is you can prove beyond a reasonable doubt that Congress has jurisdiction over the marijuana trade by looking at Raich. That's a legal question. Kennedy, so what's the instruction that the Court should give to the jury with respect to this jurisdictional element? Kennedy, ladies and gentlemen of the jury, you've heard evidence that there was a robbery of a drug dealer. You are instructed as a matter of law that that the marijuana trade is a subject over which the Congress has jurisdiction and this statute controls. That's not a very good instruction. Well, I think you would – I think that goes a long way there. I think the judge would instruct the jury that the marijuana trade is commerce over which the United States has jurisdiction as a matter of law. There's nothing for the jury to find on this point? Not on that point. But the jury must determine that there was the robbery affected jurisdiction over which. Was there any jury involved in this case or was this on a plea? There was a jury. There was a jury, so what – so we don't have to speculate. What did the judge charge? Well, the judge's instructions, I think, could have been more clear. This case, of course, is a challenge to the sufficiency of the evidence, not the jury instructions. But what was the – But the jury instructions are basically on page 8 of our brief. We've replicated the most relevant portions of the charge. And, you know, there are the standard instructions about the government has to show a jurisdictional element beyond a reasonable doubt and establish that the court defined commerce to mean commerce over which the United States has jurisdiction, and then said that that can be satisfied by reducing the – having a – showing an effect, and that effect can be, you know, I think that's in here, it's quite – any kind of effect would be sufficient. And then there was an explanation that, you know, that the reduction of articles or commodities in interstate commerce, in this case, illegal drugs and drug proceeds. So we – Well, it seems to me that this instruction is much more defendant-friendly than the one that you indicated that is a minimum. In other words, I read this as – if I'm the juror, I read these instructions as saying that I have to find that this affects interstate commerce. I think the judge could have been – had a much more government-friendly instruction in this case. And, in fact, given Raich, the judge, as I was just explaining, could have instructed the jury that all the marijuana trade, that is, both the actual trade within and interstate trade, is commerce over which the United States has jurisdiction.  Kagan.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. However, the fact that the jury is saying this is commerce over which the United States has jurisdiction, is that right? Waxman. That is correct. That has to be bound beyond a reasonable doubt. Waxman. It has to find that jurisdictional element beyond a reasonable doubt. That has an actual… But whether the United States has jurisdiction over the marijuana trade, be it inter or intrastate, has already been decided by Raich. Correct. I mean, this is no different than, say, if there's a murder on the special and maritime jurisdiction, the United States will instruct the jury what that is. The jury then makes the relevant historical facts to the case and applies that legal instruction to the facts in order to find the relevant jurisdictional element beyond a reasonable doubt. Is the defendant allowed to present any evidence to the contrary? Well, on our… Isn't it kind of silly to say they've got to prove something beyond a reasonable doubt, all the United States has to do is this, and then it's the judge instructs the jury that they've satisfied that burden? The defendant is entitled to present evidence that contradict all the relevant facts. But the — I think what you're asking about is whether the fact that this particular marijuana might have been grown in-State, right, I think that's what you're saying, would somehow undermine the jurisdictional element. And as a matter of law, it does not. What — in any — in a marijuana case, what evidence could a defendant put on that would prevent the establishment of the jurisdictional element? The defendant could show that there was not an attempt to rob a drug dealer of marijuana. Roberts. No, that goes to the first question of whether there was a robbery. Was there a robbery? Did it have an effect on — on commerce within the jurisdiction of the United States? Right. Is there any evidence that a defendant could be allowed to introduce going to the second element? Well, if they were targeting marijuana in that robbery, as was the case here, from marijuana dealers who are trading in— But that's the question, Mr. Yang, from marijuana dealers. I mean, it seems to me that the defendant could say, no, I was targeting a homegrower, you know, the kind of person from which I just — I was growing this marijuana for myself. I had no intention of ever selling it. At that point, you wouldn't be robbing somebody who was engaged in commerce, right? Or I was just robbing a house and I happened to stumble upon this. I mean, there are things that— But those are two very different things. I mean, robbing a house and stumbled upon it is one thing, but if you have somebody who's robbing marijuana that's grown for home consumption or whatever, can the defendant say the jurisdictional element is not satisfied because of that? Well, I think home consumption raises different issues, and I'll tell you why. The Hobbs Act governs robberies that have an effect on commerce over which the United States has jurisdiction. There's some question whether just growing marijuana for your own use by itself is commerce or whether it's an activity that affects commerce that would bring it in within the ambit of breach. Let's say that this Court had a decision that homegrown marijuana has an effect on interstate commerce. Let's say that's the case. Then there's a trial. What instruction? Can any evidence be introduced? Well, if the Court had said that just growing marijuana— Contested commerce part of the indictment? I think if you're asking whether the Court has decided that growing marijuana is itself commerce over which the United States has jurisdiction. Let's assume the Court has decided that. Well, then there's a trial. Is the defendant entitled to introduce any evidence on that point? No. Because as a legal— Does the jury have any discretion to return a verdict of not guilty if it finds that there was a robbery of a drug dealer, of drugs that had been homegrown? Under your predicate, no. No, it would not. I mean, this is not new in the law, right? I mean, juries are instructed on the law. They determine any of the relevant facts that would be relevant to the elements of the offense, but they have to do that within the framework of the law as instructed by the judge. Well, it may — that may be familiar in the law, but I'm not aware of any case where the burden is on the government to prove something beyond a reasonable doubt, an element of the crime, and you're saying there's no way that the defendant — no evidence the defendant could introduce could rebut the government's showing in any case. I don't— What's your best authority for that proposition? I guess it depends on what you consider to be the element of the offense and how you define it as a legal matter. What we're saying is the jury does have to find beyond a reasonable doubt that the jurisdictional element was met. But just as if Congress, for instance, as it could, could directly prohibit If Congress directly prohibited robberies of marijuana from marijuana dealers. Statute 18 U.S.C. 10,000-something, that prohibits that. And it says the jurisdictional element of this case is that the robbery — that the robbery has to target marijuana of a marijuana dealer. The jury would be deciding precisely that. And here what we have is the same type of thing through the Hobbs Act, which I believe my brother has admitted, both at, I think, page 18 of this brief and at oral argument, extends to the full extent of the Commerce Clause. The whole purpose of enacting a effects commerce provision is so you don't go through and have Congress do the burden of its — you know, they need drug dealers and we have to do, you know, robberies of this business and that. Congress exercises the full scope of its power. And so— Does the government have to prove anything in this case different from what it would have to prove if this was a charge of robbery under State law? Well, yes. I mean, robbery under State law, it wouldn't be relevant, at least under our theory of the jurisdictional element. It doesn't matter whether it's marijuana or whatever. It would just be a robbery of an individual within the definition of robbery. But here, in order to — the additional proof which is relevant to the jurisdictional element is that the robbery targeted the marijuana of marijuana dealers. And by the nature of the targeting of a commodity, the inventory of a commercial entity engaged in an interstate business that Congress regulates, does this Court have a proper— Ginsburg. Still, it's very odd that this is a Federal case. I mean, they — in fact, they took, what, a couple of cell phones, $40? What you're seeing is part of the whole Federal investigation here. If you remember, this was an investigation into the Southwest Goons, which was a gang that was engaged in particularly violent and dangerous robberies in Roanoke. The DEA tracked about 30 home invasions to this gang. There were other prosecutions. This particular defendant was a bit of a tagalong, and he was prosecuted. But the main participants in this endeavor, which, you know, the DEA was contacted by local law enforcement, because this is becoming a serious problem in Roanoke, and DEA came in and busted this gang. This is just one particular defendant that— Roberts Well, tagalong, he got 20 years. And he was involved in some very serious crimes. You don't have to admit 30 home invasions. Kennedy Actually, I think got 21. My chambers was telling me you might check that. It seems to me one year too many, but whatever. Kennedy Going back to this case, the example that you gave with reference to in the maritime jurisdiction, what you tell the jury is, ladies and gentlemen of the jury, if you find that the incidents that have been considered in this Court occurred on the high seas, then the jurisdictional element is satisfied. That's a property of the problem. Roberts Yes, and you'd have to define what the high seas were as well. Kennedy Pardon me? Roberts You'd also have to define what the high seas were for the jury. Kennedy Okay. Then in this case, it suffices, in your view, if you say, if you find there was a robbery of a drug dealer, then the jurisdictional element is satisfied. Roberts We think it's a little easier than that in this case. If you find that there was a robbery targeting the inventory, the marijuana, of a drug dealer engaged in the trade of that marijuana, then it's — there's a very direct and I think undeniable effect on commerce of information. Kennedy And the only defense evidence that could be introduced in the case is that the drugs were not involved. The defense could show that drugs were not involved. Roberts They could. And that would target directly or other defenses. Kennedy But that's about all they can do with reference to the jurisdictional element. Roberts I think that's right in this particular case, because that's the only factual question that's really relevant. Kagan Well, maybe they would show that the person wasn't a dealer. Roberts Well, that's — yes. Roberts Oh, I'm sorry. Did you concede that earlier, that it's not covered by the Hobbs Act if the person is not a dealer? Roberts I didn't concede it. What I said is you'd have to have a different theory. Kagan You said it was a very different thing. Roberts It was a different thing. And of course — Kagan And it would be a much harder thing. Roberts It would be harder. Kagan And there would be at least an awfully good argument by the defendant that if the person was not a dealer, it's not affecting commerce in the relevant way. Roberts That's correct. Roberts Even though Congress can regulate that transaction? Roberts Well, there would be a question. I think that there are arguments to be made that would go beyond the arguments that we're making here. And we're not pressing those today for various reasons. I think, as the Court has recognized, this is an area of some difficulty at times. Lopez recognizes that commerce power is necessarily one of degree and that the Court's decisions have not provided precise formulations in the nature of things it cannot. And so what we're — the Court — I'm sorry. But the Court's taken an incremental approach, and we're doing something similar here. Alito Mr. Jones, whether the Hobbs Act exercises the full measure of Congress's Commerce Clause authority, which I thought a number of cases have said, do you agree with that? Jones It does. It does. And not only that, but I think the Court doesn't think that's the case. Alito Because then you do run into these limitations in the search for a limiting principle, which you seem to be addressing. So Congress could prohibit and has prohibited a person from possessing even a very small amount of marijuana, right, a single cigarette, a single marijuana cigarette. Jones That's correct. Alito So if one person steals a marijuana cigarette from another person, robs that person of one marijuana cigarette, that's a violation of the Hobbs Act? Jones Well, there's a different argument there, and let me tell you why. The pure possession, when we're not talking about the actual trade in marijuana, but just the personal possession, that raises different questions. That was addressed by Raich. Now, there is an argument that could be made that that would fall within the Hobbs Act. At the same time, you Alito But it falls within the Commerce Clause, doesn't it? Jones It falls — certainly the possession is something that Congress can regulate as Raich teaches. Now, whether the robbery of one possessing, that's yet additional — an additional link into the Commerce Clause inquiry. And what I can say is that the courts of appeals have recognized, and as this Court has, in a search for the outer limits of the Commerce Clause, the courts have pulled back, and they've suggested that when you're robbing just a mere individual who's not a business or engaged in a business in the context of the robbery, that raises different questions, and it's much more difficult to establish the necessary nexus. We're not — we're not actually taking that on in this case, because we don't think we have to. What we have in this case is the robbery of the commodity, marijuana, from people engaged in its trade, when we know — we know that falls well within commerce over which the United States has jurisdiction. Alito Suppose someone robbed the farmer in Wickard v. Filburn of the wheat that the farmer was growing for personal consumption. Would that be a violation of the Hobbs Act? Jones Wickard is a little bit more complicated, because it was personal consumption, but in the context of a commercial enterprise, right? He was growing wheat for his animals and growing wheat. He also grew wheat for sale. So — but the wheat that we're talking about is the wheat that he was growing for his own use in his business. I think there would be a stronger argument there than what you'd have if you just happened to stumble upon someone, you robbed them, and you picked up, you know, some wheat or a marijuana cigarette out of their house. Again, we don't deny that there are, at the fringes, difficult questions that this Court may have to address at some point, but what we're talking about is the— Kennedy What is your understanding of what the defendant wanted to — the evidence the defendant wanted to introduce? Jones I think the defendant wanted to introduce evidence that not all marijuana in Virginia is coming from out of State. And that's not legally relevant to our theory. Kennedy Is there any challenge to the status of these victims as dealers? Jones I think there might have been indirectly through cross-examination. But what we're talking about here is, remember, an attempt. This is an — the Hobbs Act not only covers the actual— Kennedy But it was an attempt against persons who were in the drug trade? Jones At least at a minimum, who the defendants believed were in the drug trade. And that's really what the relevant question is here. Because if, for instance, there's, you know, two people making an elaborate plan to rob a bank, and then they end up showing up at a business that's not a bank, it's actually someone's house, they can be charged with either a conspiracy or an attempt charge based on the facts as they understood them. And here, I don't think there's much of an argument that the evidence was sufficient to show that these individuals had the understanding that the two victims here were drug dealers that were engaging in marijuana in the drug trade.  Mr. Yang, I'd like to — for you to explain to me what the difference in charges are between this robbery and a regular robbery, let's say, of a business. Because, as you've noted, there are many circuits that say if you just rob a person individually, that's not a Hobbs Act robbery. But if you rob a business, it is. So how does a judge charge in a regular Hobbs Act case and this kind of case? Well, it will depend, I think, in part on the government's theory of the case. The government makes charging decisions and presents its theory, and the judge would have to charge with respect to that. So in the normal case, and this is the — this is kind of the mine run of cases that all the courts of appeals have accepted, or it's kind of a depletion-of-assets theory case. Now, in those types of cases, when you're involving the robbery of a business, the government puts on evidence, and this could be any type of business pretty much, that the business engages in some kind of interstate commerce. That's kind of showing something's particularized, just like here you're showing with the marijuana deal. Sotomayor, engages how? Either by buying goods in commerce? Buying goods from out-of-state, selling to out-of-state customers, and buying equipment from out-of-state, all types of things. Sotomayor, let's assume that that's true. Is the jury charged that this particular robbery had to affect that? Yes, because what they end up — the theory, the depletion-of-assets theory, which, again, this has been established in all the courts of appeals for quite some time, is that even if you're robbing not — something that has not moved in commerce, say, money, what you're doing is you're depleting the assets of an enterprise that is engaging in interstate commerce. And so by doing that, you're hindering its ability to engage in interstate commerce on a prospective basis. Sotomayor, so the jury is charged to make that determination, that this act of robbering the money hindered the commerce in some way? Or has the potential to. I mean, they don't have to. So how is that different than his argument, your adversary's argument? Oh, I think that that is his argument. I mean, I think he accepts in his brief the depletion-of-assets theory and says that the government has to show that this marijuana moved in interstate commerce or that the dealers sold to people out of State, which I will note parenthetically is a little difficult when we're talking about an attempt and we're talking about people who trade in marijuana that don't always — are not always forthcoming in their admissions to law enforcement. But that's his theory. Our position is that is not necessary, because we know already, although that's one means of showing an effect on interstate commerce, there are other means. And the theory here is that the robbery affects commerce over which the United States has jurisdiction. We know that commerce over the United States has jurisdiction includes the inter- or intrastate trade in marijuana, and that, therefore, in this theory, which is different, it's a different way of proving the same jurisdictional element, that under our theory here, the evidence was sufficient because there was sufficient evidence to show that these — the Southwest goons, including Petitioners, were targeting these two victims because they expected to gain marijuana from the individuals who they thought were drug dealers. If the Court has no further questions, we'd ask that you affirm. Roberts. Thank you, counsel.  Thank you, Your Honor. The — I'd like to digress to the question about a single cigarette. If that is stolen or subject to robbery, would that affect the Hobbs Act? Taking the extension that my friend is suggesting here, if we read the last phrase of the Hobbs Act, it says, all other commerce over which the United States has jurisdiction. The application of rage to controlled substances, the Controlled Substance Act, if it has no limits on this element of interstate commerce, then the answer to that is if a person comes up and robs an individual of a single joint of marijuana, it could possibly trigger a Hobbs Act conviction, because it's all — it encompasses all. I don't think that under any interpretation of the Hobbs Act has it been discussed that we're going to make robberies a generalized Hobbs Act violation. That isn't this case. This case is a robbery of a drug dealer, correct? That's correct. And what we're saying, Your Honor, is that in the robbery of a drug dealer, it still requires an independent finding about whether or not there was a disaffect on commerce. And that's what's lacking here. That's what's lacking in this case. And that's what we're suggesting should take place. The government should have to prove that element so that the jury in its independent finding on that element, on the jurisdictional element. Any questions? With that, Your Honor, we would ask the Court to reverse. Thank you, Counsel. Case is submitted.